IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROGELIO CASTILLO CHAVEZ,                    2:14-CV-02031-BR

            Plaintiff,                      OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

            Defendant.

KAREN STOLZBERG
11830 S.W. Kerr Parkway #315
Lake Oswego, OR 97035
(503) 251-0707

            Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011


DAVID MORADO
Regional Chief Counsel
MARTHA A. BODEN
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-3710

            Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

Plaintiff Rogelio Castillo Chavez seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

Plaintiff protectively filed his application on April 1, 2011, and alleged a disability onset date of December 3, 2009. Tr. 45.[1] The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on May 14, 2013. Tr. 62-85. At the hearing Plaintiff was represented by an attorney. A Spanish language translator was present. Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on June 10, 2013, in which he found Plaintiff is not disabled. Tr. 45-56. Pursuant to 20 C.F.R. & 404.984(d) that decision became the final decision of the Commissioner on October 28, 2014, when the Appeals Council

---

[1] Citations to the official transcript of record filed by the Commissioner on February 27, 2015, are referred to as "Tr."

denied Plaintiff's request for review.  Tr 1-7.  *See Sims v. Apfel*, 530 U.S. 103, 10607 (2000).


## BACKGROUND

Plaintiff was born on August 5, 1958, and was 54 years old on the date of the hearing.  He completed the sixth grade in Mexico and can read and write in Spanish to some degree.  Tr. 70.  Although Plaintiff can understand some English, he cannot write in English.  Plaintiff stated it would help him to receive instructions orally in Spanish rather than in writing.  He can do simple math with a calculator.

Plaintiff has past relevant work experience as a forklift driver, truck driver, and orchard pruner.  Tr. 74.

Plaintiff alleges disability due to "back, waist condition." Tr. 238.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).   The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings

if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must

assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also
Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set

6 - OPINION AND ORDER

forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged
in substantial gainful activity (SGA) since his December 3, 2009,
alleged onset date.  Tr. 47.  Plaintiff met the insured status
requirements of the Social Security Act through September 30,
2015.

At Step Two the ALJ found Plaintiff has severe impairments
of "lumbar degenerative disc disease with radiculopath, status
post discectomy with residual encroachment of the S1 nerve root."

At Step Three the ALJ found Plaintiff's impairments do not
meet or equal any listed impairment.  Tr. 48.  The ALJ found
Plaintiff has the RFC for less than a full range of medium work
and can lift or carry twenty-five pounds frequently and fifty
pounds occasionally, is able to sit for six hours during a normal
eight-hour workday, and is able to stand or to walk for about six
hours during a normal eight-hour workday.  He can frequently push
or pull within the applicable lifting restrictions.  He can never
climb ladders, ropes, or scaffolds and can only occasionally
climb ramps and stairs.  He can occasionally balance, stoop,
crouch, kneel, or crawl.  He can frequently reach with his upper

7 - OPINION AND ORDER

extremities.  He cannot drive a forklift over rough surfaces.
Tr. 48.

At Step Four the ALJ found Plaintiff capable of performing
past relevant work as a truck driver and orchard pruner, and,
therefore, Plaintiff is not disabled.  Tr. 55.


**DISCUSSION**

Plaintiff contends the Commissioner erred by (1) improperly
finding Plaintiff not fully credible; (2) improperly
rejecting medical opinion testimony; (3) failing to apply
"the Grids" properly to find a closed period of disability;
and (4) improperly rejecting lay-witness testimony.

## I.   Plaintiff's Credibility

The ALJ is responsible for determining credibility,
resolving conflicts in medical testimony, and resolving
ambiguities.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.
1995).  *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir.
2008).  The ALJ's findings, however, must be supported by
specific, cogent reasons.  *Reddick v. Chater,* 157 F.3d 715, 722
(9th Cir. 1998).  *See also Holohan v. Massanari,* 246 F.3d 1195,
1202 (9th Cir. 2001).  Unless there is affirmative evidence that
shows the claimant is malingering, the ALJ's reason for rejecting
the claimant's testimony must be "clear and convincing."  *Id.*
The ALJ must identify the testimony that is not credible and the

evidence that undermines the claimant's testimony. *Id.*  The
evidence on which the ALJ relies must be substantial. *Id.* at
724.  *See also Holohan,* 246 F.3d at 1208.  General findings
(*e.g.,* "record in general" indicates improvement) are
insufficient to support an adverse credibility determination.
*Reddick,* 157 F.3d at 722.  *See also Holohan,* 246 F.3d at 1208.
The ALJ must make a credibility determination with findings
sufficiently specific to permit the court to conclude that the
ALJ did not arbitrarily discredit the claimant's testimony.
*Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

When deciding whether to accept a claimant's subjective
symptom testimony, "an ALJ must perform two stages of analysis:
the *Cotton* analysis and an analysis of the credibility of the
claimant's testimony regarding the severity of [his] symptoms."
*Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges
> disability based on subjective symptoms "must
> produce objective medical evidence of an under-
> lying impairment which could reasonably be
> expected to produce the pain or other symptoms
> alleged." *Bunnell,* 947 F.2d at 344 (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799
> F.2d at 1407-08.  The *Cotton* test imposes only
> two requirements on the claimant:  (l) she must
> produce objective medical evidence of an
> impairment or impairments; and (2) she must
> show that the impairment or combination of
> impairments *could reasonably be expected to*
> (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.  *See also Carmickle v. Comm'r Soc. Sec.*

9 - OPINION AND ORDER

*Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

A.  **Plaintiff's Function Report and Pain Questionnaire**

In July 2011 Plaintiff completed a Function Report and Pain Questionnaire.  Tr. 244-60.  He stated sitting, lifting, climbing, and bending causes pain in his waist and back. Tr. 245.  Plaintiff described his daily activities as "bath, eat, fish, eat, watch television, etc."  Tr. 246.  Plaintiff answered "yes" to a question about whether he cares for others and stated "my 3 yr old grand son not always just as he needs to come over and see grandfather."  *Id.*  Plaintiff stated he could no longer drive, sit, climb, walk, bend, lift, or do yard work.

Plaintiff reported he prepares his own meals that include frozen dinners, rice, and meat, and he cooks plain and simple foods as needed.  Tr. 247.  He does household chores by wiping things down, watering the yard, and moving the sprinklers although he has the help of his family and he does not do these chores every day.  Tr. 248.  He drives and can grocery shop for "no longer than 30 minutes."  *Id.*

Plaintiff's hobbies and interests are fishing, watering the yard, and walking.  Tr. 249.  The frequency of these activities depends on how he feels and his pain level.  He talks on the telephone and goes to church.  Since his condition began, Plaintiff can no longer dance, go on family trips, sit for long periods, take long walks, run, or bike.  Tr. 250.  He can walk

"about 2 blocks total" before requiring 30-45 minutes rest.  *Id.*

**B.  Plaintiff's Testimony**

Plaintiff testified at the May 2013 hearing that he lives in a one-story house.  Tr. 69.  It would be difficult for him to climb stairs because it would cause pain in his lower back and left leg.  Plaintiff testified I feel "as if the nerve is very squeezed or pressed when I walk."  Tr. 70.

Plaintiff injured his back at work in December 2009, and by March 2010 he had filed a Workers' Compensation claim and thereafter received some money.  Tr. 71-72.  He tried to work at light duty for a few weeks in July 2010, but the work was not actually light duty and caused "a great deal of pain in my low back. . . ."  Tr. 72.  He tried to return to driving a forklift, but after about a week and a half his "low back couldn't tolerate that."  *Id.*

Plaintiff said he likes to walk, he walks slowly for about a mile, and it makes his leg feel better.  Tr. 75.  He can sit for about twenty minutes before needing to change positions.  He lies down four or five times a day for about fifteen minutes at a time.  Tr. 76.  Lifting twenty pounds causes a burning sensation in his back.  He thinks he could lift ten-pound boxes all day.  Tr. 77.  He cannot crawl on his hands and knees.

Plaintiff had a discectomy in April 2010.  Tr. 78.  His pain improved for a short time and then increased.  For a while

Plaintiff did not need any medication, but he started taking medication again when the pain increased in approximately July 2010. Tr. 79. His treating physician has recommended another back surgery and told him that he might experience pain and have to take daily medication for the rest of his life.

The ALJ found Plaintiff less than fully credible regarding the intensity, persistence, and limiting effects of his symptoms. Tr. 49. The ALJ also found Plaintiff's allegations were inconsistent with the objective medical evidence. The ALJ noted Plaintiff had a discectomy on April 5, 2010, and was released to work on June 28, 2010, with the limitation that he should not lift more than 45 pounds. Tr. 50, 309.

### 1. __Consistency of Plaintiff's Statements__

When assessing a claimant's credibility the ALJ may consider the consistency of his statements. SSR 96-7p at *5. *See also Thomas,* 278 F.3d at 958. Inconsistency with objective medical evidence is a clear and convincing reason to reject a claimant's credibility where, as here, it is not the sole reason. 20 C.F.R. § 404.1529; *Thomas,* 278 F.3d at 959.

The ALJ noted Plaintiff's testimony regarding pain in his lower back and legs when walking (as if his nerve felt "squeezed") and that he could only sit for about twenty minutes before needing to change positions. Tr. 49, 70, 75. Plaintiff also testified he needed to lie down four or five times per day

to manage the pain.  Tr. 49, 76.  As the ALJ pointed out, however, this testimony conflicts with Plaintiff's testimony that he likes to walk because he feels better and it helps the pain in his leg.  Tr. 49, 75.  The Court finds this portion of Plaintiff's testimony was inconsistent with Plaintiff's allegations as to his symptoms and limitations, and, therefore, they constitute clear and convincing reasons for finding Plaintiff's testimony was not credible.

### 2.  <u>Plaintiff's Activities of Daily Living</u>

The ALJ found Plaintiff's testimony was not fully credible because he stated he spends about an hour a day with his young grandson, waters the yard and moves the sprinklers, and takes his daughter fishing and out to lunch.  Tr. 52, 245-49. The Court, however, does not find any of these activities are inconsistent with Plaintiff's allegations as to his symptoms and limitations, and, therefore, they do not constitute clear and convincing reasons for finding Plaintiff's testimony was not credible.

### 3.  <u>Excessive Subjective Claims of Pain</u>

The ALJ cited the March 2010 physical examination conducted by William DeBolt, M.D., a neurologist, and Mark Leadbetter, M.D., an orthopedic surgeon, during which Waddell's testing was positive for compression, traction, and rotation. Tr. 50, 304.  Positive Waddell's tests are considered by many

physicians to indicate pain complaints arising from psychosocial issues such as pending litigation, job dissatisfaction, or financial concerns.  Drs. DeBolt and Leadbetter noted Plaintiff showed "great expressions of pain" with lumbar extension.  *Id.*

The ALJ also noted the January 2011 examination of Plaintiff by neurosurgeon Ronald Vincent, M.D., in which Dr. Vincent recorded Plaintiff's "significant pain behavior" during straight-leg raising and during examination of Plaintiff's left lower extremity.  Tr. 51, 344.  Dr. Vincent stated his evaluation of Plaintiff was "complicated by findings that are non-neuroanatomical, non-neurophysiological, and nondermatomal, as well as significant pain behavior noted in the course of the motor examination."  *Id.*

In addition, the ALJ cited the February 2013 examination of Plaintiff by David Russo, D.O.  Dr. Russo stated he "could not detect evidence of symptom embellishment nor magnification," but "discordant straight leg validity check . . . appears to be effort/pain behavior related."  Tr. 52, 454.

On this record the Court concludes the ALJ did not err when he found Plaintiff's testimony was not fully credible because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## II.  The Medical Evidence

Disability opinions are reserved for the Commissioner.  20

14 - OPINION AND ORDER

C.F.R. § 404.1527(e)(1).  If there is a conflict between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and to observe the patient as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (Treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006)(examining physician).  Even if one physician's opinion is contradicted by the opinion of another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of a nonexamining physician by itself is insufficient to constitute substantial evidence for rejecting the opinion of a treating or examining physician.  *Widmark,* 454 F.3d at 1066 n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Kohan has been Plaintiff's treating physician since at least January 2009.  Tr. 350.  In March 2012 Dr. Kohan wrote a letter to an unspecified recipient in which he stated Plaintiff "is having sciatica and his MRI shows another bulging disc.  He would likely benefit from surgery and is unable to work at this time due to this medical issue."  Tr. 389.  In July 2012 Dr. Kohan wrote a letter in which he said he met with Plaintiff in the office that day and that Plaintiff "has not been able to work for a couple years or more now due to sciatica and herniated disc.  He is unable to perform any work at this time due to pain and narcotic use."  Tr. 407.  On July 17, 2012, Dr. Kohan stated in his examination notes that Plaintiff had another herniated disc, but Worker's Compensation had denied reopening his claim and determined the new herniation was not related to his prior work-related herniation.  Accordingly, Worker's Compensation would not cover the necessary surgery, and Plaintiff did not have any other insurance.  Tr. 408. Under "Plan" Dr. Kohan noted Plaintiff may benefit from surgery or an epidural injection, but "[h]e is not able to work at this time."  Tr. 409.

The ALJ gave Dr. Kohan's opinion little weight because it was "not consistent with the totality of the evidence in the record."  Tr. 54.  The ALJ found "Dr. Kohan appears to be relying on the claimant's reports of pain rather than the objective evidence" and "also appears to be acting as an advocate for the

claimant rather than offering an objective opinion." *Id.*

The ALJ cites the March 1, 2010, independent medical examination conducted by Drs. DeBolt and Leadbetter on behalf of Worker's Compensation. Tr. 302-08. The doctors concluded Plaintiff's L5-S1 disc compression was work-related and that Plaintiff should be able to return to work six weeks after discectomy. Tr. 50, 306.

On April 5, 2010, Plaintiff had a discectomy, and his surgeon, Perry E. Camp, M.D., released him to work on June 28, 2010, with lifting restricted to less than 45 pounds, no lifting with twisting, sitting or standing for twenty minutes at a time for a total of six hours per day, and unlimited walking. Tr. 310, 328.

The ALJ also noted the January 2011 examination by Ronald Vincent, M.D., a neurosurgeon. Tr. 340-47. Plaintiff reported numbness in his thigh extending to his foot and aching pain in his low back. Tr. 340. Dr. Vincent, nevertheless, found Plaintiff had 5/5 muscle strength in his lower extremities and released him to regular work without restriction. Tr. 346.

In September and November 2011 Plaintiff reported increased back pain to Dr. Kohan. Tr. 378, 392. A December 6, 2011, MRI showed bilateral neural foraminal narrowing, mild on the left, moderate on the right; residual dorsal right lateral disc protrusion producing mild right lateral recess compromise; and

dorsal left paracentral disc protrusion L5-S1 significantly encroaching upon descending left S1 nerve root.  Tr. 380.

The ALJ also noted the June 2012 independent medical examination by Thomas Rosenbaum, M.D., a neurosurgeon.  Tr. 51, 395-06.  Dr. Rosenbaum diagnosed Plaintiff with lumbar spondylosis preexisting Plaintiff's industrial injury and possible L5-S1 left herniated disc with S1 radiculopathy "not secondary to his prior industrial injury."  Tr. 402.  Plaintiff could rise on his heels and toes without weakness and had a reduced range of motion in his lumbar spine with good motor strength.  No muscle spasm was present.  Dr. Rosenbaum did not assess any functional limitations, and stated:

> The L4-5 disc extrusion and surgery remain medically stationary.  The L5-S1 level is not the accepted level.  This level may be producing symptoms due to degenerative spon- dylosis progressing, and additional treatment may be necessary.  In order for me to ascer- tain this I would need to review his MRI scans personally and he may require a myelo- gram/CT scan.

Tr. 405.

The ALJ also cites the July 2012 examination of Mark Belza, M.D.  Tr. 51-52, 410-11.  Dr. Belza noted the December 2011 MRI "demonstrates three-level degenerative disc disease without any focal neurologic compression."  Tr. 410.  Dr. Belza found Plaintiff "moves about the room stiffly" with normal motor strength in the upper and lower extremities and his range of

18 - OPINION AND ORDER

motion in his back was limited.  *Id.*  Dr. Belza diagnosed
Plaintiff with facet syndrome and suggested a nuclear imaging
scan of the lumbar spine.  There is not any evidence in the
record that the scan was performed.  The ALJ concluded
Dr. Belza's findings were "rather minimal and not consistent with
the claimant's allegations of extreme chronic pain."  Tr. 52.

The ALJ also considered the February 2013 examination by
David Russo, D.O.  Tr. 52, 452-55.  Plaintiff reported ongoing
back pain radiating into his left lower extremity.  He used over-
the-counter medications for pain, and his symptoms were worse
with prolonged sitting or standing and better if he changed
positions.  Plaintiff's gait was mildly antalgic, and toe-and-
heel walking as well as squat and rise were "effortful but
intact."  Tr. 453.  Plaintiff had 5/5 motor strength and range of
motion in bilateral lower limbs with diminished reflexes at the
ankles and some loss of sensation in his left toes.  Dr. Russo
concluded Plaintiff retained the RFC to perform medium-level work
lifting and could carry up to 25 pounds frequently.  Tr. 454.
Dr. Russo also concluded Plaintiff was able to sit, to stand, and
to walk for the same number of hours as he could before his
injury.  The ALJ gave Dr. Russo's opinion "some to great weight."
Tr. 53.

Thus, the ALJ noted Dr. Kohan's assessment that Plaintiff
is completely unable to work is explicitly contradicted by the

opinions of Drs. Vincent and Russo.  Dr. Russo's opinion is particularly notable as his examination occurred after the December 2011 MRI indicating an exacerbation of Plaintiff's spinal pathology.

The Court concludes on this record that the ALJ did not err when he rejected Dr. Kohan's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. Assessment of Plaintiff's Residual Functional Capacity**

Social Security Regulations define "light work" as lifting not more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A full range of light work requires standing or walking off and on for a total of approximately six hours out of an eight-hour workday.  SSR 83-10.

Plaintiff contends the ALJ erred when he found Plaintiff was capable of performing "medium work."  Medium work is defined as lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds.  *Id.*  A full range of medium work requires standing or walking for a total of approximately six hours in an eight-hour workday.  Sitting may occur intermittently.  *Id.*

On July 7, 2010, Dr. Kohan noted Plaintiff should be restricted to "light duty for another month."  Tr. 370.  On July 31, 2010, Dr. Kohan stated:  "I gave him a note for light

20 - OPINION AND ORDER

duty at his last visit but he says they will not accept that at work." Tr. 372.  Plaintiff argues Dr. Kohan's restriction to "light duty" means limitation to lifting no more than 25 pounds. Pl.'s Brf. at 18.  Plaintiff's interpretation of Dr. Kohan's definition of "light duty," however, does not correspond to the SSR definition of "light work" by a margin of five pounds. Moreover, Dr. Kohan's weight restriction is directly contradicted by Dr. Camp's restriction to lifting less than 45 pounds as well as Dr. Russo's post-aggravation restriction to lift no more than 25 pounds frequently.  Tr. 309, 454.

Plaintiff argues Dr. Camp, Plaintiff's neurosurgeon, opined Plaintiff was unable to do his previous job as a forklift driver. On June 18, 2010, however, Dr. Camp stated Plaintiff "had been working on the trim line . . . and had symptoms primarily of low back tightness and pain. . . .  [I]t seems reasonable to me to send him back to his previous job with a 45-pound lifting restriction."  Tr. 310.

The Court concludes the ALJ did not err when he determined Plaintiff retained the ability to perform a restricted range of medium work because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## IV.  Lay-Witness Testimony

The ALJ has a duty to consider lay-witness testimony.  20 C.F.R. § 404.1513(d).  *See also* 404.1545(a)(3); *Lewis v. Apfel*,

21 - OPINION AND ORDER

236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Inconsistency with the medical evidence may constitute a germane reason for rejecting such testimony.  *Lewis*, 236 F.3d at 512.  The ALJ may also reject lay-witness testimony that is predicated on the testimony of a claimant who the ALJ properly found not credible.  *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

In July 2011 Plaintiff's daughter, Yobane Castillo, completed a Third Party Function Report.  Tr. 253-60.  Ms. Castillo reported she went fishing or to lunch with her father about three times a week.  Tr. 253.  She stated her father's back pain limits the amount of weight he can lift.  She reported her father likes to go for walks and goes to family gatherings about four times a month and regularly goes to church.  Tr. 256.  He walks, drives, and rides a bicycle.  Ms. Castillo stated her father's condition affected his ability to lift, squat, bend, reach, and complete tasks.  Tr. 258.  She also stated he could only lift approximately 30 pounds.  *Id.*

22 - OPINION AND ORDER

The ALJ noted Ms. Castillo's statement and found it generally credible to the extent that it was consistent with the medical records.  Tr. 53.  As noted, however, the ALJ properly found Plaintiff less than fully credible.  Moreover, Ms. Castillo's assertions are not generally supported by the medical evidence.

On this record the Court concludes the ALJ did not err in his assessment of the lay-witness testimony because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.


**CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 5th day of February, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


23 - OPINION AND ORDER